IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 16-CR-134-CVE |
| | ) | |
| JEFFREY ALLEN STEVENS, | ) | |
| | ) | |
| Defendant. | ) | |

**GOVERNMENT'S RESPONSE IN OPPOSITION TO
DEFENDANT'S MOTION IN LIMINE**

COMES NOW the United States of America, by and through R. Trent Shores, Assistant United States Attorney for the Northern District of Oklahoma, and responds in opposition to Defendant's Motion In Limine Regarding Testimony.

**A.   FACTUAL OVERVIEW**

**1.   Background**

On September 16, 2016, Tulsa Police Department (TPD) Officer Betty Shelby shot and killed Terence Crutcher an adult, black male. As a result, national news organizations, local news affiliates, and multiple social media outlets reported, discussed, and otherwise opined about the facts and circumstances surrounding the shooting. The Tulsa Police Department's website, www.tulsapolice.org, contains a link to their Internal Affairs Investigations Department[1]. The Internal Affairs Investigations Departments website

---

[1] https://www.tulsapolice.org/content/internalaffairs.aspx

provides a medium of communication through which a person may file a "Citizen's Complaint" against Tulsa Police Department employees. Reporting persons may file their complaint by completing the online Citizen Complaint form[2]. The Citizen Complaint form included various sections-to-be-completed, including "Description of Incident," "Officer(s)/Employee(s)," "Witnesses," and "Your Information." A "Submit" button was located near the bottom of the form. Just above the "Submit" button, the Citizen Complaint form provided an attestation warning that read:

> "**PLEASE READ BEFORE SUBMITTING.**
> By clicking the submit button I certify the statements in this form are true."

Beginning or about September 19, 2016, and continuing through on or September 22, 2016, Connecticut resident Jeffrey A. Stevens completed and submitted approximately ten online Citizen Complaint forms. Stevens transmitted the communications to Oklahoma via the internet from IP address 208.103.77.58, located in Connecticut. As such, Stevens' communications to the Tulsa Police Department Internal Affairs Unit were transmitted in interstate commerce.

## 2. The Threatening Electronic Communications

On September 19, 2016, at 6:18 p.m., Stevens transmitted from IP Address 208.103.77.58 the following communication via the Citizen Complaint form:

Incident Date:         09/18/2016
Incident Location:     On the road
Incident Description:  "The psychotic pile of shit who MURDERED the unarmed
                       civilian who broke down is going to be executed, as are ALL

---

[2] https://www.tulsapolice.org/content/tpd-citizen-complaint.aspx

psychotic shitbags you and other PDs hire across this Nation who murder unarmed civilians. They are all going to be killed."

On September 20, 2016, at 1:02 p.m., Stevens transmitted from IP Address 208.103.77.58 the following communication via the Citizen Complaint form:

| | |
|---|---|
| Incident Date: | 09/18/2016 |
| Incident Location: | You fucking corrupt psycho, God-complex, ego-driven ASSHOLES know where. |
| Incident Description: | "This is the straw. The revolution starts now. The psycho cunt who never should have been given a badge, as well as all her cohorts who patted her on the back and said "Good Shoot"are going to be executed unless you put them behind bars on MURDER charges. Additionally, unless the Prosecuter & the Judge deny bail, they too will be executed. America is NOT a Police State in which any mental defective owning a badge can murder at will. It's time for America to make a stand and it will. Do the right thing or die. There are no other choices." |

On September 20, 2016, at 4:28 p.m., Stevens transmitted from IP Address 208.103.77.58 the following communication via the Citizen Complaint form:

| | |
|---|---|
| Incident Date: | 09/16/2016 |
| Incident Location: | The entire Nation knows where |
| Incident Description: | "The Tulsa PD Chief is going to be killed. He is corrupt. Not only has he hired a staff full of psychotic, racist, murderous scum and refused to put a murderer behind bars, he has also presided over and created an extortion ring. He must be, and IS GOING TO BE killed. "Justice for All", right? You seriously thought you could get away with fucking people forever? Death is coming. Justice is coming." |

On September 22, 2016, at 9:25 a.m., Stevens transmitted from IP Address 208.103.77.58 the following communication via the Citizen Complaint form:

| | |
|---|---|
| Incident Date: | 09/16/2016 |
| Incident Location: | The MURDER you psychotic shit committed |

3

Incident Description: "The Tulsa PD had a documented history of planting drugs on travelers. This is something you already know. Way before this incident, a long list of corrupt shit in Tulsa who routinely victimize innocent people had already been complied. Now is the time that EVERYONE on that list is going to start being killed. Cops, Prosecutors, Judges, family members. Citizens are going to end it, along with your lives. As you know, whoever comes forward first gets immunity. In this case though, those who do not will not be prosecuted........they will be killed."

On September 22, 2016, at 9:42 a.m., Stevens transmitted from IP Address 208.103.77.58 the following communication via the Citizen Complaint form:

Incident Date: 09/16/2016
Incident Location: The murder of an innocent man
Incident Description: "The basic right to Life, Liberty & the Pursuit of Happiness for Citizens is greater than the ego of psychotic, racist shit who were mistakenly given a badge & a gun. If killing every last one of you and your families.......your wives....your children is what it takes to drive that point home, so be it. You ARE NOT GODS."

On September 22, 2016, at 10:01 a.m., Stevens transmitted from IP Address 208.103.77.58 the following communication via the Citizen Complaint form:

Incident Date: 09/16/2016
Incident Location: The murder of an innocent man
Incident Description: "Ron Palmer, who has developed a culture of corruption and victimizing innocent civilians, along with his family is going to be burned to death. Yeah, he'll be guarded for a while, and then thinking there wasn't any real threat, when you scum least expect it....he will be dead, along with his entire blood line. Then each of you who didn't speak up. Tell me, when you & your families are bleeding or burning to death, will you still believe it was worth it to fuck Americans?"

On September 22, 2016, Stevens transmitted from IP Address 208.103.77.58 the following communication via the Citizen Complaint form:

Incident Date:         09/16/2016
Incident Location:     Murder
Incident Description:  "Is the filling of the pockets of corrupt, psychotic cops worth more than your freedom? Is it worth more than the lives of your children? It started out with just under 100 Enforcers going to Tulsa. It has grown to well over 1000. Cops are going to be killed. Anyone who covers up corruption is going to be killed"

On September 22, 2016, at 10:15 a.m., Stevens transmitted from IP Address 208.103.77.58 the following communication via the Citizen Complaint form:

Incident Date:         09/16/2016
Incident Location:     Murder
Incident Description:  "Spill your guts to the Feds, even to questions they don't ask, or your kids will start dying. This ends now."

On September 22, 2016, at 10:34 a.m., Stevens transmitted from IP Address 208.103.77.58 the following communication via the Citizen Complaint form:

Incident Date:         09/16/2016
Incident Location:     Murder
Incident Description:  "The last words your child will hear are the same words that will be burned into his or her corpse: 'Your parent decided a $100 kickback for fucking an innocent civilian was worth more than you'."

In or about the afternoon hours of September 22, 2016, Tulsa County District Attorney Steve Kunzweiler conducted a press conference about the Shelby-Crutcher case. The District Attorney announced that Tulsa Police Department Officer Betty Shelby had been charged with First Degree Manslaughter and that an arrest warrant had been issued

5

for her arrest. On September 22, 2016, at 4:37 p.m., Stevens transmitted from IP Address 208.103.77.58 the following communication via the Citizen Complaint form:

| | |
|---|---|
| Incident Date: | 09/16/2016 |
| Incident Location: | Murder |
| Incident Description: | You think this gets you off the hook? It was MURDER, not manslaughter. It was a execution. Betty is not going to get 3 years probation and a pension, she is getting a bullet through her brain. America needs to, and is finally going to make an example........and it won't stop with her. Every corrupt shit asshole cop who filed a report stating that Crutcher was reaching through his CLOSED window is also going to be killed. |

### 3.     The FBI Investigation

An agent with the Federal Bureau of Investigation determined the service provider for IP Address 208.103.77.58 to be Atlantic Broadband, LLC.  Thereafter, Atlantic Broadband provided records showing that, on the relevant dates and times, the subscriber for IP Address: 208.103.77.58 was "D.P." The physical mailing address associated with the IP Address and "D.P." was 20 Church Street, Apartment 10, East Lyme, Connecticut, 06333.

Using the website www.accurint.com[3], an FBI agent conducted a search pertaining to the address "20 Church Street, Apartment 10, East Lyme, Connecticut, 06333." The results of the search indicated an individual named "Jeffrey A. Stevens" resided at the address from approximately March 2001 to the present.  A search pertaining to the name "Jeffrey A. Stevens" further showed "Jeffrey A. Stevens" had a criminal history.

---

[3] www.accurint.com is a commercial, fee-based service which contains a searchable database of collected publicly available information.

6

The FBI agent obtained a Criminal History Report for "Jeffrey A. Stevens." The report showed the Norwich, Connecticut Police Department arrested Stevens on December 6, 2005, for the felony crime of First Degree Threatening and the misdemeanor crime of Reckless Endangerment. Police report showed Stevens contacted a company who had been sending him mailers and threatened to blow up their place of business if they didn't stop sending him junk mail. The report showed that on May 13, 2008, Stevens was subsequently convicted of two misdemeanor crimes in connection with this case in the State of Connecticut.

The FBI also conducted a review of law enforcement reports associated with Stevens and determined he was previously interviewed by the FBI in 2012 and 2014. FBI agents interviewed Stevens in 2012 and 2014 because Stevens transmitted/posted threatening and inflammatory communications – via email and the social media website Facebook – targeting United States Senator Kelly Ayotte, United States Congressman John Boehner, Fox News, and Wayne LaPierre of the National Rifle Association (NRA). An FBI agent located in New London, Connecticut interviewed Stevens on November 12, 2013. Stevens' admitted making inflammatory statements against U.S. Senator Kelly Ayotte, U.S Congressman John Boehner, and Wayne LaPierre of the NRA via postings from his Facebook account. The FBI agent explicitly warned Stevens that if he continued to send threatening or harassing electronic communications, then he may be prosecuted criminally. The FBI investigation into the most recent allegations also revealed that the Wisconsin Capitol Police had previously investigated threats by Stevens against Wisconsin

7

Governor Scott Walker, and that the United States Service had reviewed threats by Stevens to kill President-elect Donald Trump, Governor Mike Pence, Speaker of the House Paul Ryan, and Republican Party affiliated officials.

On October 3, 2016, the FBI interviewed Stevens regarding the threats made to TPD. The agent showed Stevens the communications and he admitted to writing and sending the communications. Stevens stated, "I didn't say I'm going to do anything, I'm just predicting these things will happen." Stevens further stated, "I'm very upset. My wording was bad. Maybe I had a couple of beers." Additionally, Stevens admitted that he used inflammatory language and was trying to get the attention of the police chief in an effort to change hiring practices.

On October 6, 2016, FBI TFO Lissa Kennedy obtained from NDOK Magistrate T. Lane Wilson a Federal Complaint and arrest warrant for Jeffrey Stevens. The complaint alleged violations of § 875(c) and § 1512(a)(2). On October 13, 2016, FBI agents in Connecticut executed warrants at Steven's residence and arrested Stevens. Stevens declined to speak with the agents and immediately requested a lawyer. Agents recovered electronic communication devices from Stevens' residence for evidence processing. Stevens' female companion, "D.P." was cooperative and identified the computer primarily used by Stevens. Agents seized that computer and submitted it for forensic examination. The examination resulted in agents discovering threats sent by Stevens to other public officials.

### 4. **Statements by the Victims**

On October 4, 2016, Tulsa FBI TFO Chris Claramunt interviewed TPD Chief Chuck Jordan. TFO Claramunt showed Steven's email communications to Chief Jordan. After reading the communications, Chief Jordan stated that the communications caused him to be concerned for his safety and for the safety of TPD Officers.

On October 5, 2016, FBI Special Agent McCullough spoke with TPD Officer Betty Shelby after she was provided with Steven's threats. After reviewing the threats, Officer Shelby advised she believed the threats to be true and they made her fear for her safety and the safety of her family members. Officer Shelby further stated the communications made her feel threatened, intimidated, and harassed.

On October 6, 2016, Tulsa County District Attorney Steve Kunzweiler advised that upon his review of Steven's threats, he felt threatened and feared for his safety and the safety of his family. DA Kunzweiler further stated that he took precautions to further protect himself and his family because of the threats sent by Stevens.

On October 6, 2016, SA McCullough spoke with Tulsa County Judge Doug Drummond. Judge Drummond stated that he viewed the communications as credible threats and it made him concerned for his safety and the safety of his family. Judge Drummond said that although the communications did not use his name specifically, he felt the threat was aimed towards him because he will be the presiding judge over the prosecution of Officer Shelby. Judge Drummond also said that he would share the threat with his family so they could also be aware and could take extra precautions for their safety.

9

**B.      ARGUMENT AND AUTHORITIES**

Defendant seeks to preclude the victim's testimony, arguing such evidence is not relevant and is unfairly prejudicial. Defendant also suggests that 18 U.S.C. § 875(c) – in the wake of the Supreme Court's decision in *Elonis v. United States*, 135 S.Ct. 2001 (2015) – does not allow a jury to consider the subjective impact of the communication on the recipient. Def's Motion in Limine at 3. The Government disagrees and submits that the Tenth Circuit has held that a recipient's reaction to an alleged threat is relevant to a determination whether a reasonable person would interpret the statement as a threat.

**1.      The District Court Should Review the Evidence Per Fed.R.Evid. 401 & 403**

Rule 401 of the Federal Rules of Evidence defines relevant evidence as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. Rule 402 provides that "[e]vidence which is not relevant is not admissible."

Even evidence that is arguably relevant under Rule 402 may be excluded under Rule 403 if "its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury.... Fed. R. Evid. 403." "Rule 403 balancing involves two steps: (1) assessing the probative value of the proffered evidence and (2) balancing that probative weight against the three "dangers" identified in the rule. The trial court's assessment of the probative value of the evidence is a relative measurement viewed in the context of the issues and entire evidence of the case." *United States v. Peters*, 791

F.2d 1270, 1291-92 (7th Cir. 1986). The trial court's assessment of the prejudicial impact of the evidence must consider whether the evidence is *unfairly* prejudicial. Fed.R.Evid. 403. "'Unfair prejudice' within this context means an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." Advisory Committee Notes to Fed. R. Evid. 403. Evidence is "unfairly prejudicial if it 'appeals to the jury's sympathies, arouses its sense of horror, provokes its instinct to punish,' or otherwise 'may cause a jury to base its decision on something other than the established propositions in the case.'" *Carter v. Hewitt*, 617 F.2d 961, 972 (3d Cir.1980) (footnote omitted) (*quoting* 1 J. Weinstein & M. Berger, Weinstein's Evidence ¶ 403[03], at 403–15 to 403–17 (1978)).

### 2. 18 U.S.C. § 875(c) and *Elonis*

Federal law criminalizes the transmission in interstate commerce of communications containing threats to injure the person of another. *See generally* 18 U.S.C. § 875(c) (2015). In *Elonis v. United States*, 135 S.Ct. 2001 (2015), the Supreme Court examined the *mens rea* necessary to sustain a conviction under § 875(c), holding that the statute prohibits the transmission in interstate commerce of a threat to kidnap or injure, but does not apply to negligent conduct. *Id.* at 2011-12. The jury in Elonis had been instructed that a statement is a true threat when a defendant intentionally makes a statement in a context or under such circumstances wherein a reasonable person would foresee that the statement would be interpreted by those to whom the maker communicates the statement as a serious expression of an intention to inflict bodily injury or take the life of an

individual. *Id.* at 2007. The Court reversed the defendant's conviction, explaining "a 'reasonable person' standard is a familiar feature of civil liability tort law, but is inconsistent with 'the conventional requirement for criminal conduct—awareness of wrongdoing.'" *Id.* at 2011, quoting *Staples v. United States*, 511 U.S. 600, 606-07 (1994) (internal quotation omitted). The Court noted, but did not decide, the issue of whether a recklessness standard would suffice. *Id.; See also United States v. Houston*, 792 F.3d 663, (6th Cir. 2015).

The Third Circuit addressed the proper *mens rea* on remand in *United States v. Elonis*, 841 F.3d 589 (2016), reaffirming the conviction on harmless error grounds. Similar to the Supreme Court, the Third Circuit declined to address recklessness, as the evidence would have been sufficient under a higher *mens rea*. The Court ultimately held:

> We believe Section 875(c) contains both a subjective and objective component, and the Government must satisfy both in order to convict a defendant under the statute. The Supreme Court focused on the subjective component. It held that to satisfy the subjective component of Section 875(c), the Government must demonstrate beyond a reasonable doubt that the defendant transmitted a communication for the purpose of issuing a threat or with knowledge that the communication would be viewed as a threat.
>
> The Government must also satisfy the objective component, which requires it to prove beyond a reasonable doubt that the defendant transmitted a communication that a reasonable person would view as a threat.

*Elonis,* at 596 (footnotes omitted).

As such, the Government must prove both the subjective and objective prongs of the statute. The Tenth Circuit requires a showing of a subjective, specific intent to threaten. *United States v. Heineman*, 767 F.3d 970 (10th Cir. 2014); *United States v. Wheeler*, 776

F.3d 736 (10th Cir. 2015); *United States v. Twitty*, 641 Fed.Appx. 801 (10th Cir. 2016). The Tenth Circuit noted that "determining the defendant's subjective intent requires a jury to address considerations not directly relevant to an objective reasonable-person standard." *Twitty*, at 805. "… [D]etermination of a defendant's subjective intent for purposes of *mens rea* often requires consideration of the mental state of an unreasonable person, whose words, though objectively threatening, may involve "ranting and raving" and "venting ... frustration" rather than subjectively intended threats." *Twitty*, at 805. (quoting *United States v. Houston*, 792 F.3d 663, 668 (6th Cir.2015)).

With regard to the objective component, the Government must prove a true threat. *Id.* True threats are "statements where the speaker means to communicate a serious expression of an intent to commit an act of unlawful violence to a particular individual or group of individuals." *Virginia v. Black*, 123 S.Ct. 1536 (2003). A true threat is "a serious threat as distinguished from words as mere political argument, idle talk or jest." *United States v. Leaverton*, 835 F.2d 254, 256 (10th Cir. 1987). "To satisfy the reasonable-person standard for what constitutes a true threat, a jury need only find that the defendant's statement was one that a reasonable person in the circumstances would understand as a declaration of intention, purpose, design, goal, or determination to inflict bodily injury on another." *Id.* (quoting *Wheeler*, 776 F.3d at 743) (brackets and internal quotation marks omitted).  The Tenth Circuit held,

> In distinguishing between "true threats" and protected speech, this court asks "whether those who hear or read the threat reasonably consider that an actual threat has been made." *United States v. Viefhaus*, 168 F.3d 392, 396 (10th

13

>Cir. 1999); see also *United States v. Magleby*, 241 F.3d 1306, 1311 (10th Cir.2001) ("In determining the existence of a threat ... this circuit had adopted an objective test, focusing on whether a reasonable person would find that a threat existed."). Thus, it is not necessary to show that a defendant intended to or had the ability to actually carry out the threat. *Viefhaus*, 168 F.3d at 395–96. **Determining whether a statement amounts to a true threat requires "a fact-intensive inquiry, in which the language, the context in which the statements are made, as well as the recipients' responses are all relevant**." *Nielander v. Bd. of Cnty. Comm'rs*, 582 F.3d 1155, 1167–68 (10th Cir.2009); see also *Magleby*, 241 F.3d at 1311 (**the "reaction of the recipient of the alleged threat" is relevant in determining whether a reasonable person would interpret a statement to be a threat**).
>
>*Wheeler*, at 743 (emphasis added).

The Tenth Circuit's holding that a recipient's reaction to an alleged threat is relevant is to a determination whether a reasonable person would interpret the statement as a threat is consistent with the findings of other Circuits. See *United States v. Saunders*, 166 F.3d 907, 913 n.7 (7th Cir. 1999); *United States v. D'Amario*, 330 F. App'x 409 (3d Cir. 2009) (not precedential) (statements were true threats when a judge became concerned enough to alert U.S. Marshals Service and have a security system installed); *United States v. Spurilli*, 118 F.3d 221, 228 (4th Cir. 1997) (true threat found where ATF agent who received the threat felt it was serious enough to patch it through to a Special Agent at 6:30 a.m.); *United States v. Barcley*, 452 F.2d 930, 934 n.6 (8th Cir. 1971) ("proof of the effect of an allegedly threatening letter upon the addressee would throw light upon the intent of the sender."). Moreover, the Third Circuit's finding in Elonis on remand that any instructional error was harmless because "no rational juror could conclude that Elonis did not have the purpose to threaten, or did not know that a reasonable person would feel threatened" supports the

14

Government's premise here that the subjective impact of the threats on the victims is relevant to assessing the intent of the defendant. See generally, *United States v. Elonis*, 841 F.3d 589, 600 (2016).

### 3.     **Defendant's Motion In Limine Should Be Denied**

Applying the applicable law, the testimony of the victims as to the subjective impact which the Defendant's threats had upon them is both probative and not unfairly prejudicial. The testimony by the victims should be admitted as it could assist the jury in determining beyond a reasonable doubt whether Defendant's communications were "true threats." Because the Government must prove both the subjective and objective components of the statute, the victims' testimony is appropriately introduced in the Government's case-in-chief. The victims' reactions to the Defendant's communications is relevant. The context within which the victims' received the communications is relevant. The language Defendant used is relevant. Altogether, the victims' testimony should not be limited or excluded.

## C. CONCLUSION

WHEREFORE the United States respectfully requests that the Court deny Defendant's Motion In Limine.

Respectfully submitted,

DANNY WILLIAMS
UNITED STATES ATTORNEY

*/s/R. Trent Shores*
R. Trent Shores, OBA #19705
Assistant United States Attorney
110 West Seventh Street, Suite 300
Tulsa, Oklahoma 74119
(918) 382-2700

## CERTIFICATE OF SERVICE

I hereby certify that on the 22nd day of, December 2016, I electronically submitted the foregoing document to the Clerk of Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to the following ECF registrant:

*/s/R. Trent Shores*
R. Trent Shores
Assistant United States Attorney