1          UNITED STATES DISTRICT COURT FOR THE

2              NORTHERN DISTRICT OF OKLAHOMA

3

4   UNITED STATES OF AMERICA,        )
                                     )
5                Plaintiff,          )
                                     )
6   vs.                              ) CASE NO. 16-CR-134-CVE
                                     )
7   JEFFREY ALLEN STEVENS,           )
                                     )
8                Defendant.          )

9

10

11

12              TRANSCRIPT OF PROCEEDINGS
                    APRIL 14, 2017
13   BEFORE THE HONORABLE CLAIRE V. EAGAN, JUDGE PRESIDING

14                **SENTENCING HEARING**

15

16

17

18

19              A P P E A R A N C E S

20   FOR THE PLAINTIFF:          MR. R. TRENT SHORES
                                 MR. ALLEN JOHNSTON LITCHFIELD
21                               Asst. United States Attorneys
                                 110 West 7th Street, Suite 300
22                               Tulsa, OK 74119

23   FOR THE DEFENDANT:          MR. WILLIAM P. WIDELL, JR.
                                 Asst. Federal Public Defender
24                               One West Third Street
                                 Suite 1225
25                               Tulsa, OK 74103

```
1   PROCEEDINGS:

2   --------------------------------------------------------------

3             THE DEPUTY COURT CLERK:   In the case United States of

4   America vs. Jeffrey Allen Stevens, case number 16-CR-134-CVE.

5      Would the parties please identify themselves for the

6   record.

7             MR. SHORES:   Good morning, Your Honor.  Trent Shores

8   and Allen Litchfield on behalf of the United States.

9             THE COURT:   Thank you.

10            MR. WIDELL:   William Widell on behalf of Mr. Stevens,

11  Your Honor.

12            THE COURT:   All right.  Mr. Stevens is present.  We're

13  here today for sentencing.  Would you please come forward with

14  Mr. Stevens.

15     Mr. Shores, have you had timely receipt of the presentence

16  investigation report?

17            MR. SHORES:   Yes, Your Honor.

18            THE COURT:   Any objections, corrections, or changes?

19            MR. SHORES:   None.

20            THE COURT:   Mr. Stevens, did you have a chance to read

21  the presentence report?

22            THE DEFENDANT:   Yes, Your Honor.

23            THE COURT:   And did you have a chance to discuss it

24  with Mr. Widell?

25            THE DEFENDANT:   Yes, I did.
```

1          **THE COURT:**  Mr. Widell, did you have timely receipt of

2  that report?

3          **MR. WIDELL:**  I did.

4          **THE COURT:**  Any objections, corrections, or changes?

5          **MR. WIDELL:**  Just the objections on file, Your Honor.

6          **THE COURT:**  All right.  So, before I get to your

7  objections, I want to note that in paragraph 8, the offense

8  conduct, I think there's a typographical error.  I think it

9  should be "September 19, 2016."  Is that correct?

10          **MR. SHORES:**  That is correct, Your Honor, consistent

11  with the allegations in the indictment.

12          **THE COURT:**  Any objection to that, Mr. Widell?

13          **MR. WIDELL:**  No, Your Honor.

14          **THE COURT:**  All right.  So, I'm going to direct that

15  paragraph 8 be corrected to show that the beginning date was

16  September 19th, 2016.

17     Now, with regard to your objections, Mr. Widell, is there

18  anything further you want to add to your written objections?

19          **MR. WIDELL:**  No, Your Honor.

20          **THE COURT:**  So I'll now rule on the objections to the

21  presentence report.

22     The defendant filed an objection to the presentence report,

23  docket number 48, containing two objections to the presentence

24  report.  These objections both involve the number of victims,

25  therefore, they have been consolidated into one discussion.

1    Specifically, defendant objects to paragraphs 16 through 38

2  of the presentence report, as they relate to the number and

3  nature of the victims of the offenses.

4    The defendant argues that the threats he made were directed

5  at the Tulsa Police Department, an entity, and not at

6  individual members and, therefore, the six-level enhancement

7  pursuant to sentencing guidelines section 3A1.2(b) identified

8  in paragraph 17 should not apply.

9    In addition, because he argues that there was only one

10 victim, he also argues that all five counts should group

11 together and three levels added in paragraph 35 should not

12 apply.

13    The court notes that in the five offenses of conviction,

14 beginning on or about September 19, 2016, and continuing

15 through on or about September 22nd, 2016, the defendant sent

16 electronic communications to the Tulsa Police Department

17 Internal Affairs Unit in Tulsa, Oklahoma, through the Tulsa

18 Police Department's website.  All of the messages sent by the

19 defendant contained threats to kill members of the law

20 enforcement and legal community of Tulsa and Tulsa county

21 and/or their families.  Several of these threats were directed

22 specifically at certain individuals, namely, Chief of Police

23 Chuck Jordan and Tulsa Police Officer Betty Shelby.  The

24 defendant subsequently entered pleas of guilty to five counts

25 related to the aforementioned threats.

1    Pursuant to commentary note 3 of sentencing guidelines

2  section 2A1.6, when a case involves multiple counts and

3  multiple victims, said counts are not grouped under sentencing

4  guidelines section 3D1.2.

5    Accordingly, because the defendant specifically threatened

6  Officer Shelby and Chief of Police Chuck Jordan, and made

7  generalized threats to the members of the Tulsa Police

8  Department and their children, the five counts were grouped

9  into three separate groups and the offense levels were

10 tabulated accordingly.  As a result, the defendant received a

11 multi-count adjustment of three levels pursuant to sentencing

12 guidelines section 3D1.4.

13   Additionally, because Officer Shelby and Chief Jordan were

14 members of the Tulsa police force, and the threats made by the

15 defendant were made because of their status as police officers,

16 a six-level increase was applied pursuant to sentencing

17 guidelines section 3A1.2(b).

18   The defendant argues that the threats he made were directed

19 at the Tulsa Police Department, an entity, and therefore there

20 is only one victim.  He further argues that the threats were

21 made to a government group and, as such, the enhancement under

22 section 3A1.2(b) should not apply pursuant to sentencing

23 guidelines section 3A1.2, commentary note 1.

24   In support of his arguments, the defendant argues that the

25 messages were sent to an e-mail address operated by the Tulsa

1  Police Department and not directly to Officer Shelby or Chief

2  Jordan, nor did the messages contain instructions to forward

3  said threats to them.  He proffers that it would have been a

4  simple matter to contact the individuals directly.

5       Contrary to the defendant's assertions, the court finds

6  that the e-mail address to which the threats were sent is not

7  determinative as to the number of victims.

8       In *United States v. Parker*, 551 F.3d 1167, Tenth Circuit,

9  2008, the Tenth Circuit found that when a defendant made

10  multiple phone calls to 9-1-1 threatening schools and city hall

11  with a bomb, it was proper to treat the threats as if they were

12  made to multiple victims despite the specific schools not being

13  named or the schools or city hall not being contacted directly

14  by the defendant.  Id. at 1174.

15       Additionally, though the threats did not contain explicit

16  instructions from the defendant to forward the threats to the

17  intended victims, a reasonable person would expect a law

18  enforcement agency to inform any of its officers, former

19  officers, or family members of officers of potential dangers

20  and threats against their persons.

21       It is clear from the language of the guidelines, as well as

22  the holding in *Parker*, that the five counts involved at least

23  three separate victims: the members of the Tulsa Police

24  Department as a whole and their children, as well as Chief

25  Jordan and Officer Shelby who were specifically named.

1     Accordingly, both the multi-count adjustment pursuant to

2 section 3D1.4 and the victim enhancement pursuant to section

3 3A1.2(b) were applied correctly.  Therefore, the defendant's

4 two objections are overruled.

5     Mr. Widell, have I addressed all of your objections?

6          **MR. WIDELL:**  Yes, Your Honor.

7          **THE COURT:**  Having so ruled, therefore, the court

8 accepts the presentence report with the one correction made and

9 directs that it be filed of record, under seal as to the

10 portions not disclosed to defendant and counsel, and defendant

11 and counsel will not be permitted access to the portions under

12 seal.

13     Having ruled on that, Mr. Shores, do you know of any legal

14 or factual issues in dispute other than the pending motion for

15 variance or nonguideline sentence, docket number 50, the

16 sentencing memorandum of the defendant in support thereof,

17 docket number 49, and your response in opposition to the

18 variance?

19          **MR. SHORES:**  None, Your Honor.

20          **THE COURT:**  Other than those, any factual or legal

21 issues?

22          **MR. SHORES:**  Nothing other than what the court has

23 mentioned.

24          **THE COURT:**  And, as you know, I'll rule on those as

25 parts of stating the sentence.

1          MR. SHORES:  Yes.

2          THE COURT:  Mr. Widell, other than your pending motion

3    and legal arguments in support, and the government's

4    opposition, do you know of any legal or factual issues in

5    dispute?

6          MR. WIDELL:  I do not.

7          THE COURT:  All right.  So, subject to my ruling on

8    those motions, I'll now make my factual findings with regard to

9    the advisory guideline range and then I'll ask counsel if

10   there's anything inaccurate in these findings.

11      Total offense level, 23; criminal history category, I;

12   custody, 46 to 57 months; supervised release, one to three

13   years per count; probation, ineligible; fine, $20,000 to

14   $200,000; restitution, not applicable; special monetary

15   assessment, $500.

16      Mr. Shores, do you know of anything inaccurate in those

17   findings?

18          MR. SHORES:  No, Your Honor.

19          THE COURT:  And do you, Mr. Widell?

20          MR. WIDELL:  I do not.

21          THE COURT:  All right.  Those will be the findings of

22   the court.

23      I'll note for the record that the defendant's plea of

24   guilty to each of Counts One, Two, Three, Nine and Ten of the

25   indictment were made pursuant to a written plea agreement,

1  docket number 38.

2      Upon review of the presentence investigation report, the

3  court hereby accepts the plea agreement insofar as paragraphs

4  10 and 11 are covered by Rule 11(c)(1)(A).

5      I have read and considered two letters submitted on behalf

6  of the defendant, one from his girlfriend or partner, and one

7  from the community services facility.  Have you seen those,

8  Mr. Widell?

9            **MR. WIDELL:**  Yes, Your Honor.

10           **THE COURT:**  And have you, Mr. Shores?

11           **MR. SHORES:**  Yes, Your Honor.

12           **THE COURT:**  All right.  So I have read and considered

13  those.

14      At this time, before I hear from counsel and the defendant,

15  and consider further the arguments contained in the motion, are

16  there any victims present who wish to be heard?

17           **MR. SHORES:**  Yes, Your Honor, there are two victims

18  present today who wish to make a brief statement to the court.

19  And a third victim, district judge Doug Drummond, provided the

20  government with a letter late yesterday that he asked that I

21  read to the court this morning.

22           **THE COURT:**  Let's start with Judge Drummond's letter

23  then, please.

24           **MR. SHORES:**  All right.  Judge Drummond's letter

25  reads:

1      "Judge Eagan:

2      "I am unable to attend Friday's sentencing because of a

3    commitment to speak at a CLE in Oklahoma City.

4      "As a long-time prosecutor and as a judge on a criminal

5    docket, I know potential risks are associated to both jobs.

6    However, the knowledge of this threat (as well as the language

7    used) greatly concerned me, especially as it related to the

8    safety of my family (which includes my wife, two teenage

9    children and a 31-year-old stepdaughter living in her own

10   home).  Initially, I did not know the location of this person

11   and/or whether the person had the ability to carry out his

12   threat.

13     "I also communicated the threat to my wife and family to

14   caution them and for us to be more vigilant for our safety.

15   The uncertainty of who made the threat (or what information

16   they possessed) also was a concern.  I did not know if the

17   person had information on where we live or where we go to

18   church or where my wife works or where my kids attend school.

19   I communicated this to my family, which obviously caused alarm

20   with my wife, given the publicity and circumstances of the

21   Betty Shelby case.  I also communicated this threat to my staff

22   at the courthouse so they would take precautions.

23     "I simply ask you to hold Mr. Stevens accountable for his

24   actions to the extent you deem appropriate (as I know you do in

25   every case.)  I do consider threats made to myself and my

1   family as a serious matter.  But I'm also thankful for the

2   quick investigation and actions of law enforcement as well as

3   the subsequent prosecution.  I recognize that such cases as

4   these sometimes could have much more serious consequences.

5       "Thank you for your consideration.

6       "Sincerely, Doug Drummond."

7           **THE COURT:**  Thank you very much.

8       And now I think Police Chief Chuck Jordan would like to say

9   a few words.  Would you please come forward, Chief.  If you

10  could just come up next to Mr. Shores, that would be fine.

11      Good morning.

12          **MR. JORDAN:**  Good morning, ma'am.

13      You know, we're living in a time -- I've been a police

14  officer since 1969 and there was a time when we classified

15  threats as idle threats, things that, you know, somebody will

16  say something about, "When I get out of prison, I'm going to

17  come back and get you," those kinds of things.  We take them

18  somewhat seriously.  We don't really give a lot of credence to

19  them.

20      In today's time, every attack on police officers across the

21  country by people, murders of police officers across the

22  county, have all related back to the same issue that were

23  raised in these threats in this case about a police officer who

24  took -- used deadly force in an instance.

25      I was very concerned about this.  I changed the security

1   policy -- or the things I did for my own personal security for

2   my wife and myself.  I have one son who's still here in town,

3   he's also a police officer, I informed them.  I say this was

4   something we don't take lightly anymore and I was concerned

5   about it.  And I think this type of thing is going on far too

6   often in our country right now.  It's just the seemingly

7   acceptance of threatening public officials and threatening

8   police officers and actually taking action against police

9   officers.  This one actually altered my life some, Your Honor,

10  and I took a lot of precautions to prevent anything happening

11  in my family.

12          **THE COURT:**  Thank you very much, Chief.

13          **MR. JORDAN:**  Yes, ma'am.

14          **THE COURT:**  And the district attorney, Mr. Kunzweiler?

15          **MR. SHORES:**  Yes, Your Honor.

16          **THE COURT:**  Good morning.

17          **MR. KUNZWEILER:**  Good morning, Judge.  Thank you.

18  I've prepared a written statement.

19          **THE COURT:**  Thank you.

20          **MR. KUNZWEILER:**  I well remember the day I was

21  informed by the Tulsa Police Department that a threat had been

22  made against me and my family.  As a prosecutor for the past 28

23  years, I have accepted that my job will result in people being

24  angry at me for the decisions I'm required to make.

25      I remember the look on my youngest daughter's face when she

1  first heard of the specific threats Mr. Stevens made toward

2  her.  It is not easy to explain to any child that there is a

3  man out there whom she's never met who intends to kidnap her,

4  torture her, and then kill her because of the job of her

5  father.

6      I remember how my wife reacted to the news of the threats

7  of Mr. Stevens.  As any mother of three daughters, she wanted

8  to know who this guy was, where he lived, and what he looked

9  like.  I remember her asking, "Connecticut?  Why would someone

10 in Connecticut want to hurt our family?"

11     I remember finally obtaining a photograph of Mr. Stevens so

12 I could show it to my family.  I remember telling them to

13 remember his face, and that if they ever saw him, they needed

14 to move away from him to the other side of the street and seek

15 the protection of anyone else who was around them.

16     Mr. Stevens' threat wasn't just directed towards me; he

17 threatened the Tulsa Police Department, Tulsa Police Department

18 Officer Betty Shelby and her family.  I can only imagine, after

19 all that she has been through, what the added worry of

20 Mr. Stevens' threats has been upon her and her family.  The

21 same holds true for the chief of police and for the judge

22 handling the case.

23     My next memory will be after today.  Once this court

24 renders its ruling, I will be picking up my phone to inform my

25 wife and children what his sentence is.  I will be telling them

1  whether he will be walking out of this courthouse or out of the

2  penitentiary.  I will be telling them when the last day of

3  whatever sentence he receives will be completed.  I will again

4  be reminding them of what he looks like and warning them of

5  what they should do if they encounter him.  I suspect the same

6  will be for the others who were threatened by him.

7      Mr. Stevens, like all of us, has a filter.  It's called his

8  brain.  He makes a choice when he speaks and when he acts.  He

9  has no one else to blame than himself, and he knew exactly what

10 he was doing when he made those awful threats that no child

11 should ever hear.

12     And just like I had to warn my wife and children what to do

13 because of his actions, he too has been warned.  He had many

14 warning signs in his life which informed him of the

15 consequences of good choices and bad choices.  Whatever this

16 court does with Mr. Stevens does not change the impact of his

17 actions upon me and my family and the others he has threatened.

18     Today is Good Friday.  In my faith, I have come to learn

19 that I need to forgive those who wrong me.  So, Mr. Stevens, I

20 forgive you, but the impact of your crime will continue until

21 the day I'm convinced you are no longer a threat to me and my

22 family.

23     One day, Mr. Stevens will be out from under the punishment

24 this court will render for him; however, my family will always

25 have to be on the lookout for this man because he has

1   demonstrated he has no filter.  My family will always be on the

2   lookout because we know, by his words, what he says he is

3   capable of doing to us and the other people he has threatened.

4   That is the lasting impact of his crime.  He will be released

5   and he will -- and we will remain captives to the lingering

6   effects of his threats.

7        Thank you, Judge.

8             **THE COURT:**  Thank you, Mr. Kunzweiler.

9        Any other victims present who wish to be heard?  All right.

10  Thank you.

11       I will take the victims' statements, as well as the two

12  letters submitted on behalf of the defendant, in formulating a

13  reasonable and appropriate sentence in this matter.

14       Of course, I'm going to take the 18, U.S.C., Section

15  3553(a) factors into account to reach an appropriate and

16  reasonable sentence.  And I'm going to take into account, of

17  course, the filings of the parties.

18       So, at this time, Mr. Widell, if you'd like to make remarks

19  on behalf of Mr. Stevens, including anything additional you'd

20  like to say in support of your motion.

21            **MR. WIDELL:**  I think everyone can agree that

22  Mr. Stevens' language was wholly inappropriate.  I like to

23  imagine that the fear of the impact that the statements had was

24  at least in some way diminished when they learned that federal

25  agents had not only identified but captured Mr. Stevens, that

1   he was 1,500 miles away, that he had no history of violence,

2   and after investigation the government concluded that he wasn't

3   a threat to anybody's safety.  At least I assume that that was

4   the conclusion, because the initial recommendation from the

5   government was a sentence of probation.  We certainly haven't

6   learned anything new about the offense conduct since that

7   point, so something has changed to change that recommendation.

8   In viewing the government's response, it's hard not to conclude

9   that, in large part, that was Mr. Stevens' letter to the court.

10      The government argues that Mr. Stevens impugned the

11   integrity of the U.S. Attorney's Office, and I suspect he did.

12   He didn't say anything positive about me either.  It didn't

13   take long to get past that little sting, though, and it

14   shouldn't.  I don't think it was wise for Mr. Stevens to have

15   sent that.

16      I do think that his speaking his mind, so long as it's not

17   a criminal act, shouldn't be held against him in this

18   courtroom, though.  What I do think is that we should look at

19   the offense conduct and make a determination as to whether he's

20   a threat and whether incarceration is necessary under the

21   3553(a) factors.  I think maybe the best way for the court to

22   make that determination is if they hear -- or if you hear from

23   Mr. Stevens himself.

24      That's all I have to say.

25          **THE COURT:**  Thank you, Mr. Widell.

1    Mr. Stevens, would you like to make remarks on your own

2  behalf?

3          **THE DEFENDANT:**  Yes, Your Honor.

4    I'm not very good at free speaking, as Mr. Widell is.  I

5  wrote something briefly.  And, if possible, I'd like to

6  personally apologize to these people --

7          **THE COURT:**  Yes.

8          **THE DEFENDANT:**  -- behind me afterward.

9    I'd like to start by saying that I'm sorry for the crimes I

10  committed.  On the day of my arrest, I sat there for two hours

11  with nothing to do but read what I'd written, and I was shocked

12  and embarrassed by my language.  And as the district attorney

13  mentioned here, my filter was off.

14    I don't know what I was thinking when I wrote those.  I was

15  angry and obviously I wasn't thinking, not about what could

16  happen to me and not about how my words would be perceived and

17  how they'd hurt other people.

18    Also, I only need to know I made things worse when I

19  entered my motions.  I was scared, I was overwhelmed, I was

20  confused by what had transpired here.  I hope that everyone

21  realizes that I never intended to do or see come to pass by any

22  means any of the horrible things that I wrote.  As you all

23  know, I've never harmed anybody in my life, but I definitely

24  understand why people could have taken it that way.  I mean,

25  these people don't know me.

1    I don't want to ever be that angry person again.  I was

2    very angry for numerous reasons, most of them my own fault, and

3    it caused people around me to suffer.  It made me and my life

4    poorer.  And I have been working with a counselor to improve

5    and identify what brought me to that point.  We've talked about

6    many things, quite an eye-opener, and why I've been filled with

7    anger and fear, and more importantly, how to better deal with

8    those.  He suggested literature for me to read on the subject

9    and we have regular appointments.  Our next appointment is

10   scheduled for Wednesday.

11       My goal is to just restore myself to the person who

12   everybody -- everyone in my life knows me as and, of course, to

13   be a better partner to my much prettier half, Diane, the love

14   of my life, who has patiently put up with these last horrible

15   years of turmoil, two or three years.

16       I have also come to recognize once again something I always

17   knew, but positive change can't come from negative actions,

18   something that I'd always known but I lost sight of for a

19   while.  And my words did nothing but increase the amount of

20   fear and anger already present in a very angry and fearful

21   world.  By being a better person again, I hope to make that up.

22   I have always led by example, a good example, and I'm very

23   ashamed.  I hope everybody can understand how sorry I am for

24   all this.

25       **THE COURT:**  Thank you, Mr. Stevens.

1     Mr. Shores, remarks on behalf of the United States?

2         **MR. SHORES:**  Your Honor, this has been an interesting

3    journey to get to where we are today.  When these threats first

4    came across to the Tulsa Police Department website, as you

5    heard directly from Chief Jordan and DA Kunzweiler and the

6    words written by Judge Drummond, they had a very serious

7    impact, especially within the context of where the world was at

8    that time, where our world and our community was in the wake of

9    the Terence Crutcher shooting.  And the words, while sent

10   across the Internet, had a very real-world impact.  And when

11   Mr. Stevens says that everyone knows that he wouldn't harm

12   anyone, I would submit to the court that there is and was harm

13   in fact done, emotional, mental harm.

14        When Mr. Kunzweiler described the fear that his family had,

15   the fact that, as Mr. Drummond described, he did not know where

16   this individual was when these threats were initially made,

17   that is a harm.

18        And while we're here talking about threats made against

19   members of the Tulsa Police Department and justice officials in

20   Tulsa county and the city of Tulsa, Mr. Stevens' list of

21   victims extends far beyond that.  This is a pattern of

22   behavior.  As the court is aware through other filings, this

23   defendant has threatened President Trump, Speaker Ryan, NRA

24   representative Wayne LaPierre, Congressman Boehner, Senator

25   Ayotte, Governor Scott Walker, and the list goes on.

1     Your Honor, too often today individuals get on the Internet

2  and they make comments for the hope of stirring up some sort of

3  social discord.  And if they're just using the Internet as a

4  marketplace to share their ideas on society and comment about

5  what is wrong, even if they speak in hyperbole and rhetoric,

6  then fine, but the First Amendment right to free speech is not

7  unfettered, and what individuals like Mr. Stevens cannot do is

8  get on the Internet and threaten the lives and well-being of

9  justice officials, of their families, of anyone else.  That is

10 not right.  And our justice system cannot function properly if

11 judges, if prosecutors, if defense attorneys, if peace officers

12 cannot go forth in their daily jobs doing what it is that they

13 do to serve the public without fear of retribution.  It's

14 already a dangerous enough job.  So we ask that you to take all

15 of those factors into account, Your Honor.  The government is

16 asking for a guideline sentence in this case.  And we

17 appreciate the court's time this morning.

18     **THE COURT:**  Thank you.

19     I'll now state the sentence and then I'll ask counsel if

20 there's any legal reason why this sentence cannot be imposed as

21 stated.

22     The defendant filed a sentencing memorandum, docket number

23 49, and a motion for variance or nonguideline sentence, docket

24 number 50, requesting a probationary sentence based on 18,

25 U.S.C., Section 3553(a) factors.

1    Specifically, defendant contends that a sentence of

2  imprisonment is substantially greater than necessary as he has

3  no history of acting on any past threatening e-mails, a search

4  of his house produced no weapons, and a search of his computer

5  found no indication that he belongs to any radical groups.

6    The defendant further contends that, although his

7  psychological evaluation found that he does not suffer from any

8  psychological disorders, his belief that the communications

9  were necessary and appropriate, along with his post-plea

10  filings, seem to border on a mental illness.  Therefore, he

11  contends that his loss of acceptance could have been avoided if

12  he had received proper treatment.

13    Additionally, his current counselor has reportedly

14  suggested that he should be evaluated for Post Traumatic Stress

15  Disorder.  As the government originally offered a probationary

16  sentence in plea negotiations, the defendant contends that such

17  a sentence is appropriate.

18    The government filed government's sentencing memorandum and

19  response in opposition to defendant's motion for variance or

20  nonguideline sentence, docket number 51, requesting a sentence

21  within the advisory guideline range due to the defendant's

22  refusal to accept responsibility for his actions while

23  delivering another angry tirade against the criminal justice

24  system.

25    The court notes that the defendant's post-plea filings that

1  demonstrated a lack of acceptance of responsibility and a

2  concern for future similar conduct, his repetitive behavior,

3  and his lack of respect for the criminal justice system are all

4  aggravating factors that must be considered.  However, the

5  defendant did not take any additional steps to act upon his

6  threats, including no firearms or weapons were found at any

7  time during the search of his residence, he is undergoing

8  counseling for his anger management issues, and he originally

9  received an offer of probation from the United States prior to

10  his ultimate plea without such a stipulation, as the government

11  was willing to recommend a probationary sentence with complete

12  knowledge of his prior conviction and conduct in the instant

13  offenses.

14      Therefore, given the totality of the circumstances, the

15  court grants, in part, defendant's motion for variance or

16  nonguideline sentence, docket number 50, and grants a downward

17  variance of 10 levels to a total offense level of 13.  Combined

18  with a criminal history category of I, the resulting variance

19  guideline range is 12 to 18 months of imprisonment.

20      The court recognizes that the United States Sentencing

21  Guidelines are advisory and not mandatory, but has considered

22  the sentencing guidelines along with all the factors set forth

23  in 18, U.S.C., Section 3553(a) to reach an appropriate and

24  reasonable sentence in this case.  In determining a sentence,

25  the court has considered the nature of the offenses and the

1  defendant's criminal history and personal characteristics.

2     This case involved the defendant sending 10 electronic

3  communications from his residence in Oklahoma to the Tulsa

4  Police Department Internal Affairs Unit in Tulsa, Oklahoma.

5  All of the messages sent by Stevens included threats to kill

6  members of the law enforcement and legal community of Tulsa and

7  Tulsa county and/or their families.  Several of the threats

8  contained in the counts of conviction were directed by name to

9  Officer Betty Shelby and Chief of Police Chuck Jordan.

10     The defendant is a 59-year-old male with one prior

11  conviction for reckless endangerment based upon his telephone

12  threats of bombing a financial institution.  He is unemployed,

13  with one adult child, and no formal mental health diagnosis or

14  substance abuse history.

15     Based on these factors, a sentence within the variance

16  guideline range will serve as an adequate deterrent to this

17  defendant as well as others, promote respect for the law,

18  provide just punishment for the offenses, and provide

19  protection for the public.  Sentencing disparities among

20  defendants were considered in determining an appropriate

21  sentence in this case.

22     A term of supervised release is appropriate with special

23  conditions based upon the aforementioned factors and will allow

24  the defendant time to reintegrate into the community upon

25  release from imprisonment, be monitored for future law

1  violations, and receive appropriate mental health treatment.

2  Restitution is not a factor.

3      In accordance with applicable law, the court hereby imposes

4  the following sentence:  It is the order and judgment of the

5  court that the defendant, Jeffrey Allen Stevens, is hereby

6  committed to the custody of the Bureau of Prisons to be

7  imprisoned for a term of 12 months as to each of Counts One

8  through Three, Nine and Ten.  Said counts shall all run

9  concurrently each with the other.

10      The court recommends that the Bureau of Prisons initially

11  designate a federal medical center for a mental health

12  evaluation and a treatment plan.  Secondarily, the court

13  recommends that the defendant be placed in a facility that will

14  allow him the opportunity to participate in mental health

15  treatment as close to East Lyme, Connecticut, as possible.

16      Based on the defendant's financial profile, as outlined in

17  the presentence report, the court finds that the defendant does

18  not have the ability to pay a fine, therefore, no fine will be

19  imposed.

20      Upon release from imprisonment, the defendant shall be

21  placed on a term of supervised release for a period of three

22  years as to each of Counts One through Three, Nine and

23  Ten.  Said counts shall run concurrently each with the other.

24  Should the term of supervised release be revoked, an additional

25  term of imprisonment of up to two years per count could be

1    imposed at each revocation.

2        Immediately upon release from confinement, but in no event

3    later than 72 hours, the defendant must report in person to the

4    probation office in the district where the defendant is

5    authorized to reside.

6        While on supervised release, the defendant must not commit

7    another federal, state, or local crime.  The defendant must not

8    own, possess, or have access to a firearm, ammunition,

9    destructive device, or other dangerous weapon.

10       The defendant must, at the direction of the U.S. Probation

11   Officer, cooperate with and submit to the collection of a DNA

12   sample for submission to the combined DNA index system.

13       Further, the defendant must not possess a controlled

14   substance and must refrain from any unlawful use of a

15   controlled substance.  The defendant must submit to one drug

16   test within 15 days of release on supervised release and at

17   least two periodic drug tests within 120 days for use of a

18   controlled substance.

19       The defendant must comply with the standard conditions that

20   have been adopted by this court and must comply with the

21   following additional special conditions:

22       1.  The special search and seizure condition;

23       2.  The special computer restriction and monitoring

24   condition;

25       3.  The special mental health treatment condition.

1    It is further ordered that a $100 special monetary

2  assessment per count, for a total of $500, be paid immediately

3  to the United States Court Clerk for the Northern District of

4  Oklahoma.

5    Mr. Shores, do you know of any legal reason why the

6  sentence cannot be imposed as stated?

7         **MR. SHORES:**  No, Your Honor.

8         **THE COURT:**  And do you, Mr. Widell?

9         **MR. WIDELL:**  I do not.

10        **THE COURT:**  The court orders that the sentence be

11  imposed as stated.

12    Mr. Stevens, I have a duty to advise you that, subject to

13  your waiver of appellate and post-conviction rights that was

14  contained in your written plea agreement, you may have a right

15  to appeal the sentence that has been imposed.  Do you

16  understand that any notice of appeal is due within 14 days of

17  the judgment?

18        **THE DEFENDANT:**  Yes, Your Honor.

19        **THE COURT:**  Also, if you wish to appeal, do you

20  understand there are forms in the clerk's office where you can

21  apply to appeal without prepayment of costs?

22        **THE DEFENDANT:**  Yes, Your Honor.

23        **THE COURT:**  At this time, Mr. Shores, I'd ask the

24  United States to move to dismiss Counts Four through Eight of

25  the indictment.

1          **MR. SHORES:**  The United States does so move, Your

2    Honor.

3          **THE COURT:**  Counts Four through Eight of the

4    indictment are hereby dismissed.

5       Mr. Shores, can I make the required findings for self-

6    surrender?

7          **MR. SHORES:**  Yes, Your Honor, you may.  The U.S.

8    stipulates.

9          **THE COURT:**  The court finds by clear and convincing

10   evidence that the defendant is not likely to flee or pose a

11   danger to others or the community between now and his self-

12   surrender date and finds that he is a suitable candidate for

13   voluntary surrender.  Therefore, the defendant shall surrender

14   to the designated facility before 2 p.m. on June 7, 2017.

15      Mr. Stevens, I want to advise you of two things.  First,

16   the conditions of pretrial release that were imposed by the

17   magistrate judge when you first appeared in this district will

18   continue to apply until you self-surrender.

19         **THE DEFENDANT:**  Yes, Your Honor.

20         **THE COURT:**  I know you've been compliant, but if you

21   will continue to comply with those conditions, because if you

22   fail to do so, you could be immediately taken into custody.  Do

23   you understand?

24         **THE DEFENDANT:**  Yes, Your Honor.

25         **THE COURT:**  You must also make arrangements to get

USA v Jeffrey Allen Stevens (04-14-2017 Sentencing Hearing)          28

```
1  yourself to the designated facility on or before that date at

2  2 p.m.  We're going to give you a card with that date on it.

3           THE DEFENDANT:  Will that be Danbury, Connecticut,

4  probably?

5           THE COURT:  No.  You're going to wait to hear from the

6  Bureau of Prisons --

7           THE DEFENDANT:  Okay.

8           THE COURT:  -- where you will be sent, because I have

9  recommended a mental health evaluation and treatment plan.  So,

10 wherever the medical center that the Bureau of Prisons decides,

11 you'll go first, and then, after that, if you're sent to

12 another facility, I have recommended it be where you get mental

13 health treatment and as close to your home as possible.

14          THE DEFENDANT:  Yes, Your Honor.

15          THE COURT:  Anything further on behalf of the United

16 States?

17          MR. SHORES:  No, Your Honor.  Thank you.

18          THE COURT:  On behalf of the defendant?

19          MR. WIDELL:  No, Your Honor.

20          THE COURT:  All right.  We'll be in recess in this

21 matter.  Thank you.

22          THE DEFENDANT:  Your Honor, --

23          THE COURT:  Yes?

24          THE DEFENDANT:  -- may I take a moment to personally

25 --
```

USA v Jeffrey Allen Stevens (04-14-2017 Sentencing Hearing)                29

1          **THE COURT:**  If they have no objection.

2          **THE DEFENDANT:**  -- apologize to these people?

3          **THE COURT:**  Chief Jordan and others, Mr. Stevens would

4     like to apologize.

5          **THE DEFENDANT:**  Mr. Kunzweiler, Mr. Jordan -- is that

6     your name? -- I come from a law enforcement family.

7     Additionally, I personally lost people to misconduct by law

8     enforcement.  These are the factors from both sides that have

9     affected me.  I absolutely love and adore my entire family: my

10    mom was a deputy; Uncle Bill, who petitioned her to become a

11    deputy; my father figure was a judge; we have George

12    ...(INAUDIBLE)...  These people I just adored.

13        Things have changed in this world.  There's three times as

14    many people as when I was a kid.  There's 20 times as many

15    guns.  I understand cops are fearful, accidents are going to

16    happen.  I understand that.  My words were only trying to draw

17    attention to the fact that this is a different world, and maybe

18    we need more stringent acceptance policies and better training

19    and testing for law enforcement.  My words were only meant to

20    shock.  And again, I apologize.

21        That went well.  Thank you, Your Honor.

22        **THE COURT:**  Thank you.

23        (PROCEEDINGS CLOSED)

24

25

USA v Jeffrey Allen Stevens (04-14-2017 Sentencing Hearing)                    30

1                        **REPORTER'S CERTIFICATION**

2         I CERTIFY THAT THE FOREGOING IS A TRUE AND CORRECT

3    TRANSCRIPT OF THE PROCEEDINGS IN THE ABOVE-ENTITLED MATTER.

4
                             CERTIFIED:    *s/Greg Bloxom*
5                                          Greg Bloxom, RMR, CRR
                                           United States Court Reporter
6                                          333 W. 4th Street, RM 4-548
                                           Tulsa, OK 74103
7                                          (918)699-4878
                                           greg_bloxom@oknd.uscourts.gov
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25